PERKINS, Judge:
¶ 1 Appellants challenge the superior court's summary judgment for Appellee Cincinnati Indemnity Company on its claim for declaratory relief regarding the terms of an insurance agreement. We affirm, holding that a single event caused by several independent acts is a single occurrence under the applicable policy language, which defines "occurrence" as an "accident."
FACTS AND PROCEDURAL HISTORY
¶ 2 Appellants Colby Hale and Curtis Moreland were apprentices in an electrical lineman training program operated by Appellants Southwestern Line Constructors Joint Apprenticeship and Training Program, Southwestern Line Constructors Joint Apprenticeship and Training Committee, and Southwestern Line Construction Electrical Joint Apprenticeship and Training Program (collectively, "Southwestern"). While Hale and Moreland were working at the top of a utility pole at Southwestern's training facility, the pole broke and they fell, sustaining serious injuries.
¶ 3 Hale and Moreland sued Southwestern for negligence and agreed to settle their claims for the limits of Southwestern's commercial general liability insurance policy (the "Policy"). The Policy limits coverage to $1,000,000 per "occurrence," with a total aggregate claims limit of $2,000,000.
¶ 4 Southwestern's insurer, Cincinnati Indemnity, sued, seeking a declaratory judgment that Hale and Moreland's injuries were the result of a single "occurrence" and, therefore, the maximum coverage available under the policy is $1,000,000. On summary judgment, the superior court ruled that both claims resulted from a single occurrence under the Policy. Southwestern, Hale, and Moreland timely appealed.
*1088 DISCUSSION
¶ 5 A court may grant summary judgment when "the moving party shows that there is no genuine dispute as to any material fact and ... is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). We review a grant of summary judgment de novo and "view the evidence and all reasonable inferences in the light most favorable to the party against whom summary judgment was entered." Duncan v. Scottsdale Med. Imaging, Ltd ., 205 Ariz. 306, 308, ¶ 2, 70 P.3d 435, 437 (2003). The interpretation of insurance policy language is a matter of law that we review de novo . First Am. Title Ins. Co. v. Action Acquisitions, LLC , 218 Ariz. 394, 397, ¶ 8, 187 P.3d 1107, 1110 (2008).
¶ 6 The Policy requires Cincinnati Indemnity to pay amounts Southwestern became legally obligated to pay as damages because of bodily injury or property damage caused by an "occurrence" within the coverage territory. The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The facts are undisputed-Hale and Moreland were not injured by continuous or repeated exposure to substantially the same general harmful conditions. The issue is whether their injuries resulted from a single "accident" within the meaning of the Policy. The superior court ruled that "accident" means an unforeseen and unplanned event, and since there was only one accident (the collapse of the pole), there was only one occurrence.
¶ 7 Relying on Arizona Property and Casualty Insurance Guaranty Fund v. Helme , 153 Ariz. 129, 735 P.2d 451 (1987), Appellants argue the number of independent acts that caused the pole to break determines the number of occurrences, and assert Southwestern committed five independent negligent acts that caused the pole to break: (1) utilizing wooden poles in its training yard and failing to conduct a pre-climb inspection, (2) failing to perform a pre-climb "hammer test" on the pole, (3) failing to conduct a pre-climb "bore test" on the pole, (4) failing to use secondary support for the pole, and (5) failing to properly supervise apprentices.
¶ 8 In Helme , two physicians covered by the same insurance policy each committed independent negligent acts that caused a patient's injury. Id. at 131-32, 735 P.2d at 453-54. Both physicians failed to examine the patient's spinal x-rays ; as a result, the first physician did not diagnose the patient's spinal injury, and the second physician did not properly immobilize the patient during surgery. Id. at 131-32, 136, 735 P.2d at 453-54. These failures allegedly caused the patient's quadriplegia and eventual death. Id. Based on the doctors' separate acts of negligence, the patient's survivors sought to recover for two occurrences under the policy. Id. at 132, 735 P.2d at 454.
¶ 9 The policy in Helme indemnified each doctor for "each occurrence" with coverages up to $3,000,000 per occurrence. Id. at 134, 735 P.2d at 456. That policy further defined "occurrence" as "any incident, act or omission, or series of related incidents, acts or omissions resulting in injury." Id. Our supreme court determined that under that policy language, the number of acts producing injury, not the number of injuries produced, determined the number of occurrences. Id. at 135, 735 P.2d at 457. It held that the doctors' two separate omissions were separate causal acts and therefore constituted two occurrences under the policy. Id. at 136, 735 P.2d at 458.
¶ 10 We reject Appellants' argument that Helme requires that the number of Southwestern's allegedly negligent acts determines the number of "occurrences" under the Policy at issue here. The policy at issue in Helme defined "occurrence" in relation to incidents, acts, or omissions that result in injury. Id. at 134, 735 P.2d at 456. Cincinnati Indemnity's Policy, in contrast, defines an "occurrence" as an "accident," not the precipitating causes of the accident. This difference in policy language renders Helme inapplicable here. Cf. GRE Ins. Group v. Green , 194 Ariz. 251, 253, ¶ 10, 980 P.2d 963, 965 (App. 1999) ( Helme inapplicable to policy that limited coverage by use of the term "auto accident," not "occurrence").
¶ 11 Appellants argue that Cincinnati Indemnity attempted to avoid Helme by deliberately omitting causation language from *1089 the definition of "occurrence" and contend that, read in its entirety, the Policy is not materially different from the one the Helme court considered. Appellants argue the Policy's provision that Cincinnati Indemnity would pay amounts Southwestern became legally obligated to pay as damages because of bodily injury or property damage caused by an "occurrence" is functionally the same as the definition of "occurrence" at issue in Helme .
¶ 12 We disagree. It is not the separation of the causation language that distinguishes the Policy from the one at issue in Helme , but the difference in the policies' definitions of "occurrence." The pole collapse was one accident and, therefore, one occurrence under the Policy. Appellants' identification of five acts or omissions that allegedly caused the collapse does not create five "occurrences."
CONCLUSION
¶ 13 For the foregoing reasons, we affirm.